# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Joseph G. Rosania, Jr.

| | |
|---|---|
| In re:<br><br>THUNDER RIDE INC.,<br>EIN: 99-2129546,<br><br><br>Debtor. | Case No. 25-14589-JGR<br>Chapter 7 |
| HARVEY SENDER, Chapter 7 Trustee,<br><br>Plaintiff,<br>v.<br><br>PEARL DELTA FUNDING, LLC,<br><br>Defendant. | Adv. Pro. No. 25-01360-JGR |

## ORDER DENYING MOTION TO DISMISS ADVERSARY PROCEEDING

THIS MATTER is before the Court on the Motion to Dismiss Adversary Proceeding filed by Pearl Delta Funding LLC ("Defendant") on February 9, 2026 (Doc. 11); the Response filed by Chapter 7 Trustee, Harvey Sender ("Plaintiff") on February 23, 2026 (Doc. 13); and Defendant's Reply filed on March 2, 2026 (Doc. 14).

## INTRODUCTION

Thunder Ride, Inc. ("Debtor") filed its Chapter 11 bankruptcy case on July 23, 2025 (Case No. 25-14589-JGR, Doc. 1). As set forth in the Status Report (Case No. 25-14589-JGR, Doc. 104) filed by the Debtor, the company operated a motorsports dealership specializing in the sale of off-road vehicles, personal watercraft, boats, cars, parts, clothing, and accessories. The Debtor also serviced similar equipment. The Debtor sought bankruptcy relief claiming a lien against receivables asserted by a merchant cash advance company resulted in cash flow restrictions.

In its amended schedules, the Debtor listed assets in the total amount of $4,403,055.87. The assets consisted of: cash and bank account balances of $374,199.25; security deposits and pre-payments of $72,106.73; accounts receivable of $336,087; inventory of $3,537,172.27; furniture, fixtures, and equipment totaling $23,000; a 2023 RAM vehicle valuated at $51,404; other machinery, fixtures, and equipment

valued at $7,765.62; and a domain name valued at $1,324 (Case No. 25-14589-JGR, Doc. 109).

The Debtor listed secured claims totaling $10,048,475.33 and unsecured claims totaling $1,229,344.28. Six merchant cash advance creditors with claims totaling $1,535,504.95 were included in the secured claims (Case No. 25-14589-JGR, Doc. 109).

The Debtor's reorganization efforts were short-lived. On September 11, 2025, the United States Trustee filed a Motion for the Appointment of a Chapter 11 Trustee pursuant to 11 U.S.C. § 1104(a) (Case No. 25-14589-JGR, Doc. 95). Paragraph 22 of the motion alleged:

> [T]he Debtor's sole shareholder [Enoch Amoah], engaged in substantial mismanagement and possible fraud in the management of the Debtor. As set forth above, Amoah caused the Debtor to incur at least $2,347,400 cumulative debt from six MCA lenders between February and June of 2025, which resulted in approximately $79,463.70 in automatic ACH withdrawals from the Debtor's bank account *every week*, while transferring the proceeds of those loans to himself or to other entities. Unsurprisingly, the Debtor could not sustain the debt limit and was forced to seek bankruptcy protection within a matter of months.

The filing of the United States Trustee's motion resulted in the Debtor filing a motion to convert the chapter 11 case to chapter 7 (Case No. 25-14589-JGR, Doc. 97). An order granting the motion and converting the case to chapter 7 was entered on October 6, 2025 (Case No. 25-14589-JGR, Doc. 133) and Plaintiff was appointed to serve as the Chapter 7 Trustee.

On October 8, 2025, Defendant filed Proof of Claim 16-1 in the amount of $447,843.14. The claim was filed as a secured claim, referencing a security interest in "Receivables" perfected by the filing of a UCC-1 Financing Statement (Case No. 25-14589-JGR, Claims Register).

## THE ADVERSARY PROCEEDING

Plaintiff brought this avoidance action to recover payments made to the Defendant totaling $114,656.79. In his First Claim for Relief, Plaintiff alleges that nine weekly payments made to the Defendant in the amount of $12,500.01 each during the period from April 24, 2025, through June 20, 2025, are avoidable as preferential transfers under 11 U.S.C. § 547(b). The Second Claim for Relief alleges a payment made to the Defendant on August 28, 2025, in the amount of $2,156.70 is avoidable as an unauthorized post-petition transfer under 11 U.S.C. § 549(a). The Third Claim for Relief seeks to recover the avoided transfers for the benefit of the estate pursuant to 11 U.S.C. § 550. The Fourth Claim for Relief preserves the avoided transfers for the benefit of the estate pursuant to 11 U.S.C. § 551.

In pertinent part, the numbered paragraphs in the complaint (Doc. 1) alleged:

12. On February 27, 2025, on behalf of the Debtor, Amoah signed a Sale of Future Receipts Agreement ("SFR Agreement") with the Defendant in which the Debtor borrowed $488,722 from the Defendant. After deducting the Defendant's "origination fee" of $14,662, net proceeds of $474,035 were deposited into the Debtor's First National Bank Account ending in 437 (the "437 Account").

13. On June 30, 2025, more than four months after the proceeds were deposited into the 437 Account, Defendant caused a 6th priority UCC-1 to be recorded in the Colorado Secretary of State's Office on June 30, 2025, under the name of CT Corporation System as representative of an undisclosed principal.

14. Under the terms of the SFR Agreement, the Debtor was obligated to make weekly payments to the Defendant of $12,500.01. According to the proof of claim filed by the Defendant in this case, on October 8, 2025, it withdrew $200,000.16 from the Debtor's 437 Account between March 6, 2025, and June 20, 2025.

15. Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 23, 2023 [SIC] (the "*Petition Date*").

16. During the 90 days prior to the Petition Date, the Defendant withdrew $112,500.09 from the 437 Account (the "*Transfers*"). A true copy of the Transfers identified by Date, Amount, and Source, is attached hereto as Exhibit A.

17. Post-petition, on August 28, 2025, the Defendant withdrew $2,156.70 from the 437 Account (the "*Post-Petition Transfer*").

The First Claim for Relief alleged that the Transfers constituted a transfer of an interest of the Debtor in property to or for the benefit of the Defendant; made for or on account of an antecedent debt owed by the Debtor before such Transfers were made; within the 90 days prior to the bankruptcy filing; while the Debtor was insolvent or presumed to be insolvent; and allowed the Defendant to receive more than it would have received if the Transfers had not been made and Defendant received payment of its debt to the extent provided by the provisions of the Bankruptcy Code.

The Second Claim for Relief alleged the Post-Petition Transfer was a transfer of property of the estate and not authorized under the Bankruptcy Code or by the Bankruptcy Court.

## JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. § 1334. This adversary proceeding seeks avoidance and recovery of an alleged preference and is a core proceeding under 28 U.S.C. § 157(b)(2)(F). Venue is proper under 28 U.S.C. § 1409.

**LEGAL STANDARD**

Fed.R.Civ.P. 8(a)(2), made applicable by Fed.R.Bankr.P. 7008, requires a pleading stating a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 12(b)(6), made applicable by Fed.R.Bankr.P. 7012, permits dismissal for "failure to state a claim upon which relief can be granted."

To survive a motion to dismiss under Fed R. Civ. P. 12(b)(6) (as incorporated by Fed.R.Bankr.P. 7012), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. *Morse v. Regents of the Univ. of Colo.,* 154 F.3d 1124, 1126–27 (10th Cir. 1998). However, the Court need not accept legal conclusions as true. *Khalik v. United Air Lines,* 671 F.3d 1188, 1190 (10th Cir. 2012). "Accordingly, in examining a complaint under Rule 12(b)(6), [the Court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* at 1191. The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. *Bryson v. Gonzales,* 534 F.3d 1282, 1286 (10th Cir. 2008).

A claim is considered "plausible" when the complaint contains facts which allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 663. "Plausible" does not mean "probable," although the plaintiff must show that its entitlement to relief is more than speculative. *Id.*; *Twombly,* 550 U.S. at 555. "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted). However, "Specific facts are not necessary; the [complaint] need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly,* 550 U.S. at 544). Still, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

The Tenth Circuit has stated:

> As we have emphasized, "[g]ranting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Clinton v. Sec. Benefit Life Ins.*

4

> *Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023) (quoting *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)) (second alteration in original). We impose a "low bar for surviving a motion to dismiss," *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020), and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely," *Id.* (quoting *Dias*, 567 F.3d at 1178).

*Brown v. City of Tulsa*, 124 F.4th 1251, 1264 (10th Cir. 2025).

When evaluating a motion to dismiss, a court may properly consider exhibits attached to the complaint, all materials referenced in the complaint, and materials subject to judicial notice. *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008). The court may also consider documents not attached to the complaint or incorporated by reference, but that are "integral to the complaint." *Official Comm. of Unsecured Creditors v. Bay Harbour Master Ltd. (In re BH S&B Holdings LLC)*, 420 B.R. 112, 132 (Bankr. S.D.N.Y. 2009). *See also Tal v. Hogan*, 453 F.3d 1244, 1264-65 n.24 (10th Cir. 2006) ("facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment").

The Rule 12(b)(6) inquiry is not an evidentiary inquiry. The Court does not weigh evidence, resolve factual disputes, decide credibility, or determine whether the plaintiff will ultimately prevail. The question is whether the complaint, viewed through the Rule 12(b)(6) lens, is legally sufficient to proceed. A complaint may survive dismissal even if proof of the alleged facts appears improbable, so long as the well-pleaded allegations raise the right to relief above the speculative level.

## THE MOTION TO DISMISS

Defendant's Motion contends the complaint should be dismissed for failure to state a plausible claim for relief. The argument is based on Defendant's conclusion that the SFR Agreement entered into between the parties constitutes a "true sale" of future receipts. The Defendant contends the SFR Agreement is to be interpreted according to Florida law.

Defendant argues 11 U.S.C. § 547(b) is limited to the avoidance of "any transfer of an interest of the Debtor in property." Similarly, avoidance of post-petition transfers under 11 U.S.C. § 549(a) is limited to transfers of property of the estate. Because the Debtor had no ownership interest in the funds from which the payments were made, the payments are insulated from avoidance.

Defendant cites various provisions of Article 9 of the Uniform Commercial Code as codified under Florida law for the proposition that the SFR Agreement was a "true sale" of the future receipts. Because it was a true sale, the Debtor retained no legal or equitable interest in the future receipts. Defendant cites *Matter of Polk*, 2020 WL 762215 at *11 (Bankr. M.D. Ga. Feb. 14, 2020) and *In re R&J Pizza Corp.*, No. 14-43066-CEC, 2014 WL 12973408 at *2 (Bankr. E.D.N.Y. Oct. 14, 2014) in support of the argument. While

5

both cases were decided applying New York law, Defendant claims that Florida law is similar and would compel a finding that the Debtor retained no interest in the "sold" future receipts.

Defendant submits under Florida law, when considering a "sale versus loan" issue, courts look to the transfer of risk and economics of the transaction.  Factors considered include whether the agreement contains (i) a finite term, (ii) a reconciliation provision, and (iii) provides recourse provisions in the event of bankruptcy or default citing *In re McKenzie Consulting LLC*, No. 8:24-BK-01255-RCT, 2024 WL 3508375 at *2 (Bankr. M.D. Fla. July 19, 2024).

Defendant argues the SFR Agreement meets the criteria of a true sale under Florida law: (i) it does not contain an interest rate or payment schedule and has no time period during which the purchased receipts must be collected; (ii) the agreement includes a reconciliation provision that can be exercised by the seller to adjust the periodic payments; and (iii) the agreement acknowledges the full purchased amount may not be received in the event the seller's business goes bankrupt.

The Defendant recognizes that certain merchant cash advance agreements have been determined to be loans as opposed to sales, but argues the cases are distinguishable.  *CapCall, LLC v. Foster (In re Shoot the Moon, LLC)*, 635 B.R. 797 (Bankr. D. Mont. 2021) held a merchant cash advance agreement was a loan, applying a six-factor test that Defendant argues is contrary to the applicable Florida law.  The Defendant distinguishes the finding in *In re Heart Heating & Cooling LLC*, Case No. 23-13019, 2024 WL 1228370 (Bankr. D. Colo. Mar. 21, 2024) that a merchant cash advance agreement was a loan because it was decided in the context of eligibility requirements for a debtor seeking relief under subchapter V of chapter 11 and points to differences between the agreement at issue there and the SFR Agreement.

Secondarily, Defendant argues that even if the SFR Agreement did not constitute a true sale of the receipts, the payments cannot be avoided as preferential transfers because the payments were made in the ordinary course of business or financial affairs of the Debtor and the transferee under 11 U.S.C. § 547(c)(2).

Defendant argues it has been engaged in routine business dealings with the Debtor pursuant to SFR Agreement since February 25, 2025, including periods preceding the preference period.  The payments were consistent, in the same weekly amount, and made in accordance with the terms of the SFR Agreement.  Further, transactions like the SFR Agreement have become a common practice, the Debtor properly remitted payment and did not demonstrate it was financially unhealthy.  The Defendant states had it been aware of the Debtor's potential unhealthy financial status, it would have not entered into the SFR Agreement in the first instance.

## THE PLAINTIFF'S RESPONSE

Plaintiff argues dismissal of the complaint is inappropriate because the claims for relief are plausible and the arguments raised in the Motion to Dismiss are factual in nature and not ripe for determination.  The Plaintiff addresses the arguments in the Motion to Dismiss as follows.

Plaintiff alleged in the complaint that the Debtor borrowed $488,722 from the Defendant. The repayments were transfers on an interest of the Debtor in property made to or for the benefit of the Defendant and made for or on account of an antecedent debt. The transfers were made while the Debtor was insolvent and allowed Defendant to receive more that it would have received in a chapter 7 case if the payment had not been made.

Plaintiff argues the conclusion that the Debtor was divested of legal or equitable interests in the receipts as a result of a "true sale" is dependent upon the determination that the SFR Agreement is a true sale as opposed to a loan transaction cannot be decided at this stage of the proceeding. While noting that the motion to dismiss is densely packed with statutory references, including the Uniform Commercial Code and case law regarding the determination of a true sale versus a loan, Plaintiff argues the issue before the Court is whether the complaint states plausible claims for relief.

In support of this argument, Plaintiff cites *In re Butler Trucking LLC*, No. 24-32443, 2025 WL 1934205 (Bankr. N.D. Ohio July 14 2025) which held that the issue of whether the merchant cash advance agreement constituted a sale or a loan was not appropriately resolved at the motion to dismiss stage.

Plaintiff then argues even if the SFR Agreement constituted a "true sale" and not a loan, dismissal of the preference claim is not warranted citing *In re Global Energy Services., LLC*, No. 21-17305-NVA, 2025 WL 1012721 at *9 (Bankr. D. Md. Mar. 31, 2025) (assuming the transaction in question was a sale, the complaint nevertheless plausibly alleged the elements of an avoidable preferential claim); and *In re JLK Constr., LLC*, No. 23-50034 2025 WL 3681827, at *17 (Bankr. W.D. Mo. Dec. 18, 2025) ("though transfers made to pay on account due or repay loans are the more common types of transfers 'for or on account of an antecedent debt' under § 547(b)(2), courts have determined transfers in satisfaction of MCA sales also may satisfy the antecedent debt elements").

Plaintiff notes that Defendant's Proof of Claim establishes the existence of a debt between the Debtor and the Defendant and satisfies the antecedent debt element citing *In re a Goodnight Sleepstore, Inc.*, No. 17-03274-5-JNC, 29 WL 342577, at *5 (Bankr. E.D.N.C. Jan. 25, 2019).

Plaintiff asserts in considering a motion to dismiss, the Court must accept all well-pled facts in the complaint as true and in the light most favorable to the Plaintiff, the complaint states plausible claims for relief.

Finally, Plaintiff argues that whether Defendant is entitled to assert an ordinary course of business defense under 11 U.S.C. § 547(c)(2) cannot be determined on a motion to dismiss. Plaintiff argues the determination of the affirmative defense is necessarily fact-intensive and is not ripe for determination at this stage in the proceedings.

7

The Plaintiff asserts the transaction itself is not in the ordinary course of business and determining what the Defendant knew of the Debtor's financial condition must be addressed in determining whether an ordinary course defense exists.

## THE DEFENDANT'S REPLY

Defendant's Reply reiterates the contention that because the SFR Agreement constitutes a true sale, Plaintiff's claims must be dismissed because the Debtor retained no legal or equitable interests in the future receipts. Defendant cites *Tese-Milner v. Capstone Credit, LLC (In re Level 8 Apparel, LLC)*, 2024 WL 3379539, *26 (Bankr. S.D. N.Y. 2024), *Manchester v. First Bank & Tr. Co. (In re Moses)*, 256 B.R. 641, 645 (B.A.P. 10th Cir. 2000), *Mann v. LSQ Funding Grp., LLC*, 71 F.4th 640, 646 (7th Cir. 2023) for the proposition that if the transfers involve property that did not belong to the Debtor the avoidance claims must fail.

Defendant argues Plaintiff's reliance on *Butler* and *Global Energy* for the conclusion that the determination of sale versus loan is not appropriately decided on a motion to dismiss is misplaced because the complaint failed to specifically allege that the SFR Agreement was a loan rather than a sale.

Defendant argues *JLK* addresses the issue of whether there was an antecedent debt, not whether the transfers involved an interest of the Debtor in property and is therefore not applicable.

The Reply then pivots and adds a new ground for dismissal not raised in the motion to dismiss. Defendant argues Plaintiff's failure to allege "based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c)" is fatal and must result in the dismissal of the complaint.  *JLK* at *19.

Addressing the ordinary course defense, Defendant argues "[u]nder Rule 12(b), F.R.Civ.P., a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim. If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule." *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965); see also *Vill. Homes of Colo., Inc. v. Guar. Bank (In re Vill. Homes of Colo., Inc.)*, 405 B.R. 479, 482 (Bankr. D. Colo. 2009) ("An affirmative defense may be raised in a motion to dismiss for failure to state a claim if the defense appears plainly on the face of the complaint itself.").

Defendant argues its ordinary course defense is apparent on the face of the complaint, satisfying all of the elements of 11 U.S.C. § 547(c)(2).

## ANALYSIS

### Transfer of Interest in Debtor's Property

Defendant's motion is dependent upon a finding that the funds it received during the 90-day preference period and post-petition were not property of the Debtor or the Debtor's bankruptcy estate.  To reach this finding, the Court must find that the SFR

Agreement, entered into on or around February 25, 2025, resulted in an absolute sale of the Debtor's future receipts.

Defendant looks to the terminology of the SFR Agreement which states in no uncertain terms that the agreement is a sale of future receipts as opposed to a loan. But "courts do not rely solely on forms or labels." *Butler* at *5. Whether the substance of a transaction is a sale or a loan is a fact-intensive issue that cannot be resolved without evidence. *Id.* at *4.

The Defendant cites *Polk* and *R&J Pizza* for the proposition that the SFR Agreement was a sale, not a loan, and as a result, the Debtor retained no legal or equitable interests in the future receipts. Neither case was decided on a motion to dismiss. The ruling in *Polk* that the MCA agreement was a sale was issued after a trial on 11 U.S.C. § 523(a) dischargeability claims. The sale finding was necessary for an embezzlement claim. The holding in *R&J Pizza* was made in connection with a cash collateral dispute after an evidentiary hearing.

Defendant argues Florida law looks to the economics of the transaction and the transfer of risk when considering whether an agreement is a sale or a loan. The factors used in considering the determination cause the SFR Agreement to be a sale in that it (i) does not contain a finite term, (ii) it includes a reconciliation provision, and (iii) the Defendant assumed the risk of loss in the event of default or bankruptcy.

Again, the cases cited by Defendant determining the mca agreements were sales not loans were not decided at the motion to dismiss stage. *McKenzie* was decided, after a hearing, in connection with the determination of eligibility requirements for a debtor seeking relief under subchapter V of chapter 11. The cases of *Craton Entm't, LLC v. Merch. Capital Grp., LLC*, 314 So.3d 627 (Fla. 3d DCA 2021) and *Saralegui v. Sacher, Zelman, Van Sant Paul, Beily, Hartman & Waldman, P.A.*, 19 So.3d 1048, 1051 (Fla. 3d DCA 2009) were decided on summary judgment, not on motions to dismiss.

With respect to reconciliation provisions, a common theme of the cases cited indicates courts look to the operative effect of the clause. Whether reconciliation actually occurs or is merely illusory is a factual determination. *See McKenzie* at *3.

As to the third factor, the Defendant's purported assumption of risk and loss is negated by Defendant's filing of proof of claim 16-1, which evidences an expectation of recovery of the amounts advanced under the SFR Agreement.

Factual issues exist with respect to whether the SFR Agreement is a sale or a loan precluding a finding at the motion to dismiss stage that the Debtor retained no legal or equitable interest in the future receipts.

**Preference Claims**

In the initial complaint, the Plaintiff alleged in paragraph 12 that the Debtor borrowed $488,722 from the Defendant. Paragraph 14 of the complaint references the secured proof of claim filed by the Defendant. Paragraph 13 of the complaint alleges the

Defendant failed to timely file a UCC-1 financing statement. The allegations taken together plausibly allege that the SFR Agreement is a loan as opposed to a sale.

Paragraph 16 of the complaint identifies nine weekly ACH debits made to Defendant within the 90-day preference period drawn from the Debtor's bank account. Paragraph 20 of the complaint alleges the transfers constitute a transfer of an interest of the Debtor in property for the benefit of the Defendant. The complaint plausibly alleges that the transfers were made from the Debtor's property.

The complaint alleges (i) transfers were made to the Defendant; (ii) on account of an antecedent debt; (iii) while the Debtor was insolvent; (iv) within the 90-day period preceding the bankruptcy case filing; and (v) the transfers enabled the Defendant to receive more than the Defendant would have if the case was filed under chapter 7, the transfers had not been made, and the Defendant received payment of its debt to the extent provided by the provisions of the Bankruptcy Code.

When the allegations are taken as true and viewed in the light most favorable to the Plaintiff as required when considering a motion to dismiss, the complaint plausibly states a claim for relief under 11 U.S.C. § 547(b) and under 11 U.S.C. § 549(a). The complaint identifies the post-petition transfer and alleges the transfer constitutes an unauthorized transfer of property of the estate.

**Due Diligence Allegations**

The Defendant raises for the first time in its reply that the Plaintiff failed to specifically allege "based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c)." Defendant argues the addition of the language to the introductory paragraph of 11 U.S.C. § 547(b) under the Small Business Reorganization Act of 2019 created a new element that must be pleaded when stating a preference claim.

The prevailing view is the amendment requiring the exercise of "due diligence" was to prevent abuses where chapter 7 trustees, with no knowledge of the facts prior to their appointment, would simply "sue the checkbook" of the debtor without adequately investigating the specific facts underlying each transfer or where so-called "preference mills" file actions based on disbursements made by the Debtor without taking into consideration the nature of the transactions from which the payments arose. *See* 5 Collier on Bankruptcy ¶ 547.02A (16th 2026). Courts are split as to whether the added language creates a new element for a preference claim.

Some courts have held that due diligence must be affirmatively pleaded as an element of a preference claim. *See, e.g., Husted v. Taggart (In re ECS Refin., Inc.)*, 625 B.R. 425, 454 (Bankr. E.D. Cal. 2020) ("[D]ue diligence and consideration of affirmative defenses, is an element of the trustee's prima facie case." (citation omitted)); *In re Pinktoe Tarantula Ltd.*, No. 18-10344 (LSS), 2023 WL 2960894, at *5 (Bankr. D. Del. Apr. 14, 2023) (collecting cases and determining "the due diligence requirement is an element of a preference claim, not an affirmative defense").

10

Other courts look to the allegations of the complaint to determine whether due diligence was exercised by the plaintiff in pursuing the preference claim, taking the alleged facts in the complaint as true and construing them in the light most favorable to the plaintiff. *See e.g. Rebein v. NutriQuest, LLC (In re Sandy Rd. Farms, LLC)*, Nos. 22-40446, 25-7001, 2025 Bankr. LEXIS 2721, at *8 (Bankr. D. Kan. Oct. 22, 2025).

Here, the allegations in the complaint demonstrate Plaintiff evaluated the preference action, taking into consideration the untimely perfection of the claimed security interest in receivables, competing security interests, the nature of the Debtor's business, and the Debtor's downward spiraling financial condition immediately prior to the filing of the bankruptcy case. The complaint satisfies the condition precedent of due diligence.

**The Ordinary Course Defense**

Defendant seeks dismissal of the complaint contending it holds an ordinary course defense that prevents recovery of the transfers as preferences. Defendants claim the defense appears plainly upon the face of the complaint and may be disposed of on a motion to dismiss.

When dismissal is sought based on an affirmative defense, dismissal is appropriate only if the defense is apparent from the face of the complaint or from materials the Court may properly consider at the Rule 12(b)(6) stage. Otherwise, affirmative defenses ordinarily require a developed factual record. This limitation is especially important where the asserted defense turns on context, course of dealing, value, intent, timing, or other fact-intensive issues.

To prevail on an ordinary course defense, a defendant must prove that an allegedly preferential transfer was made: (1) in payment of a debt incurred by the debtor in the ordinary course of business, and (2) either the transfer was (i) made in the ordinary course of business of the debtor and defendant, or (ii) the transfer was made according to ordinary business terms. *In re C.W. Min. Co.*, 798 F.3d 983, 991 (10th Cir. 2015).

The defense is narrowly construed. *Jobin v. McKay (In re M & L Bus. Mach. Co.)*, 84 F.3d 1330, 1339 (10th Cir. 1996). When determining the ordinary course of the parties' business under 11 U.S.C. § 547(c)(2)(A), courts apply a "subjective" standard, looking to the way the parties actually conducted their business dealings. *Lovett v. St. Johnsbury Trucking*, 931 F.2d 494, 497 (8th Cir. 1991); *Tulsa Litho Company v. BRW Paper Co., Inc. (In re Tulsa Litho Company)*, 229 B.R. 806, 810 (10th Cir. B.A.P. 1999).

In considering whether the transfers occurred according to the ordinary course of the parties' business, courts in the Tenth Circuit must consider the following four factors:

(1) the length of time the parties were engaged in the transaction in issue;
(2) whether the amount or form of tender differed from past practices;
(3) whether the debtor or creditor engaged in any unusual collection or payment activity; and
(4) the circumstances under which the payment was made.

*In re Sunset Sales*, 220 B.R. at 1020-21.

11

Courts typically consider these factors by comparing pre-preference period transfers with preference period transfers. *Id.* at 1021. "Although there are four factors, courts often focus upon one of these factors and any significant alteration in any one of the factors may be sufficient to conclude that a payment was made outside the ordinary course of business." *In re Furr's Supermarkets,* 373 B.R. 691, 706 (10th Cir. B.A.P. 2007) (internal quotation marks omitted).

Defendant cites *Village Homes of Colo., Inc. v. Guar. Bank (In re Village Homes of Colo., Inc.)*, 405 B.R. 479, 482 (Bankr. D. Colo. 2009) and *In re Crucible Materials Corp.*, No. 09-11582 MFW, 2012 WL 5360945, at \*5 (Bankr. D. Del. Oct. 31, 2012) in support of its claim that an affirmative defense may be raised in a motion to dismiss for failure to state a claim. Both cases are distinguishable.

*Crucible* involved one repayment of a bond obligation during the preference period. The terms of the payment did not differ from 46 earlier payments over a nearly 25-year period. *Id.*

*Village Homes* involved declaratory relief to enforce express waivers of rights under Colorado's mechanics lien trust fund statute. The affirmative defense that the waivers were unenforceable as against public policy was disposed of on a motion to dismiss as Colorado law recognizes contractual waivers. *Village Homes*, 405 B.R. at 484.

The establishment of an ordinary course defense under the facts presented here requires factual determinations including the circumstances under which the transaction was entered into within six months of the bankruptcy case filing.

**Leave to Amend**

While the initial complaint plausibly states claims for relief under 11 U.S.C. §§ 547(b) and 549(a), more detailed allegations regarding the characterization of the SFR Agreement and the due diligence undertaken by the Plaintiff in pursuit of the preference action would benefit the Court and Defendant in preparing its defense of the action.

Accordingly, the Court will grant Plaintiff leave to file an amended complaint within 14 days of the date of this order.

## CONCLUSION

For the reasons stated above, it is

ORDERED that Defendant's Motion to Dismiss Adversary Proceeding (Doc. 11) is DENIED. It is

FURTHER ORDERED the Plaintiff may file an amended complaint on or before **May 29, 2026.** It is

FURTHER ORDERED that Defendant shall file an answer or other responsive pleading on or before **June 12, 2026.**

Dated this 14th day of ___May___, 2026.

BY THE COURT:

_____
Joseph G. Rosania, Jr.
United States Bankruptcy Judge